UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA MIELE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 cv 3811 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations for the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Miele ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Title II disability benefits under the Social Security Act. The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 11] is granted; the Commissioner's Motion for Summary Judgment [dkt. 13] is denied.

### I. Background

#### a. Procedural History

Plaintiff filed an application disability benefits on July 2, 2013. [Administrative Record ("R") 158-59.] Plaintiff alleged onset date of disability as of November 12, 2012. [R 158.] Plaintiff's date last insured ("DLI") is December 31, 2013. [R 15.] Plaintiff's claims were denied initially and upon reconsideration; Plaintiff then requested an administrative hearing, held on March 3, 2016 before Administrative Law Judge ("ALJ") Lee Lewin. [R 31-72.] Plaintiff was represented by counsel, and both a Medical Expert and a Vocational Expert testified. *Id.* On April 6, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 15-24.] On March 22, 2017, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the

Commissioner. [R 1-6.] Plaintiff filed the instant action on May 22, 2017. [dkt. 1.]

    b.    **Plaintiff's Background**[1]

Plaintiff alleges suffering from debilitating depression and anxiety following the 2012 death of her mother. [Dkt. 12, p. 1.] Prior to her mother's death, Plaintiff worked as a sales assistant for 18 years and as an account representative/manager for 5 years. [R 69-70, 200.] In 2008, Plaintiff stopped working to become her mother's full-time caregiver, taking care of all of her mother's daily needs until her mother's death in October of 2012. [R 39-40, 401.]

Plaintiff began treatment with her primary care doctor, Evangelos Biscotakis, M.D., on June 12, 2012, where she reported a 3-month history of gradually worsening depressive symptoms, including depressed mood, anhedonia, fatigue, difficulty concentrating, impaired memory, panic attacks, insomnia and poor energy. [R 298, 316.] Dr. Biscotakis reported that Plaintiff suffered from a marked degree of tearfulness and a marked degree of panic symptoms; Plaintiff was sad, depressed, anxious, and tearful. [R 298-99.] Dr. Biscotakis diagnosed Plaintiff with depression, anxiety, and abnormal grief response, and prescribed Plaintiff Paxil. *Id.*

In a February 1, 2013 follow-up with Dr. Biscotakis, Plaintiff demonstrated a lack of improvement in her depression and anxiety, reporting that she was very nervous, miserable, and unable to go out with friends, and depressed due to her anxiety attacks. [R 305.] Dr. Biscotakis reported that Plaintiff was agitated and had an anxious and depressed mood. *Id.* Dr. Biscotakis prescribed Plaintiff Cymbalta instead of Paxil. *Id.* Although Dr. Biscotakis reported some symptom improvement on June 28, 2013 and January 28, 2014, Plaintiff continued to have symptoms of fatigue and anxiety, as well as problems with oversleeping, motivation, and decision-making. [R 340, 343.]

Dr. Biscotakis completed a psychiatric report on August 12, 2013, noting that Plaintiff

---

[1] The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

2

suffered from symptoms of depression and anxiety, including feeling down and sad due to uncontrolled anxiety and social phobia. [R 316-19.] Dr. Biscotakis reported that her problems had an effect on her ability to work, including being unable to focus, concentrate, and leave home without overwhelming anxiety and fear. *Id.* Dr. Biscotakis further reported that although Plaintiff would not have serious limitations in multiple areas of functioning, she would have serious limitations in her ability to perform work-related tasks on a sustained basis (an average day/week) without undue interruptions or distractions as well as serious limitations in her ability to perform tasks on an autonomous basis without direct step-by-step supervision and direction. [R 317-19.] Regarding whether Plaintiff would be able to respond appropriately to supervision, coworkers, and customary work pressure, Dr. Biscotakis responded that Plaintiff may feel overwhelming anxiety and panic attacks. [R 318.]

On July 8, 2014 (approximately six months after Plaintiff's DLI), Dr. Biscotakis reported that Plaintiff suffered from severe anxiety and an element of PTSD from her mother's passing. [R 366.] Plaintiff was tearful, anxious, had rapid or pressured speech and inappropriate judgment, and she continued to be very uncomfortable outside of her home with recurrent thoughts of returning back home as soon as possible. *Id.*

On August 28, 2014, Dr. Biscotakis reported that Plaintiff had difficulty sleeping due to racing thoughts and difficulty getting up in the morning. [R 369.] She suffered from palpitations and panic attacks around people, and an anxious mood was reported on examination. *Id.*

On November 18, 2014, Dr. Biscotakis completed a mental capacities assessment. [R 352-53.] Dr. Biscotakis reported that Plaintiff had markedly limited ability to: deal with work stresses; perform reliably in job situations requiring the use of judgment under stress; respond appropriately to usual job situations with co-workers and supervisors; demonstrate reliability; and behave in a stable manner in stressful situations. *Id.* Dr. Biscotakis reported Plaintiff's diagnosis as anxiety with

agoraphobia, and noted that dealing with people can be very stressful for Plaintiff, especially under stressful conditions. [R 353.] Dr. Biscotakis specifically noted that this assessment would be true as of November 12, 2012, Plaintiff's alleged onset date of disability. *Id.*

On December 4, 2014, Dr. Biscotakis reported that Plaintiff's mood was anxious and that she continued to suffer from symptoms of severe anxiety including avoiding going out in public, avoiding spending time with friends, and difficulty focusing despite medication. [R 394-96.] On January 5, 2016, Dr. Biscotakis reported that Plaintiff's depression and anxiety continued to be inadequately controlled despite medication with significant symptoms of panic attacks, social isolation, crying spells, difficulty sleeping, and having more "bad" days than "good" days. [R 373.] Dr. Biscotakis increased Angela's medication. [R 374.]

In addition to her treatment with Dr. Biscotakis, Plaintiff also treated with psychiatrist Elizabeth Mirkin, M.D. [R 401.] On August 20, 2014, Dr. Mirkin diagnosed Plaintiff with a severe degree of major depressive disorder, and anxiety disorder. [R 403.] Plaintiff reported feeling extremely depressed with crying spells and social isolation, and although she felt a little better with medication, her significant depression continued; Plaintiff's speech was monotonous, and she had a depressed and sad mood with an intense, constricted, and tearful affect throughout the appointment. [R 401, 403.] Plaintiff continued to see Dr. Mirkin for the remainder of 2014 through mid-2015, where Plaintiff continued to demonstrate ongoing symptoms of a severe degree of major depressive disorder with tearfulness and a depressed mood and constricted affect reported on examination. [R 405-09.]

On December 3, 2014, Dr. Mirkin completed a mental capacities assessment. [R 356-57.] Dr. Mirkin reported that Plaintiff had a markedly limited ability[2] to: deal with normal work stresses; respond appropriately to usual job situations with co-workers and supervisors; maintain regular

---

[2] "Indicating that [she] cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting." [Dkt. 12, p. 5, fn. 2.]; *see also*, SSR 85-15, 1985 WL 56857 at *5.

attendance and be punctual within customary work tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* Dr. Mirkin reported that Plaintiff exhibits a depressed and anxious mood, poor attention and poor concentration, and that she is isolative and becomes very anxious around people. *Id.*

### c. The ALJ's Decision

On April 6, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 15-24.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of November 12, 2012 through her DLI. [R 17.] At step two, the ALJ found that Plaintiff had the severe impairments of obesity, degenerative disc disease of the cervical spine, depression, anxiety, and vertigo. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 17-19.]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds; no more than occasional climbing ramps or stairs, stooping, kneeling, crouching, crawling, or balancing; must avoid concentrated exposure to hazards, including dangerous, moving machinery and unprotected heights; can perform no more than simple, routine tasks; cannot engage in fast production rate pace or strict quota requirements; and must have no more than occasional contact with supervisors, co-workers, and the general public. [R 19.] In making this RFC determination, the ALJ analyzed Plaintiff's medical record and discussed the weight (and reasons for that weight) he gave the opinions therein. [R 19-23.] At step four, the ALJ found that Plaintiff unable to perform her past relevant work as an account manager or sales assistant. [R 23.] However, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff

---

[3] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

could perform. Specifically, the ALJ relied upon VE testimony that Plaintiff could perform the jobs of mail clerk, office helper, and library clerk. [R 23-24.] Because of this determination, the ALJ found Plaintiff not disabled under the Act. [R 24.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists

when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

On appeal Plaintiff argues, *inter alia*, that the ALJ erred in her analysis of treating physician Dr. Biscotakis's opinions, and that this constitutes reversible error. We agree.

The ALJ gave "significant weight" to Dr. Biscotakis's August 12, 2013 Psychiatric Report "as it is consistent with the evidence and the doctor's examination notes prior to the date last insured." [R 22; 316-19.] Indeed, Plaintiff is correct that the ALJ gave this opinion more weight than any other opinion she considered in her decision and relied upon when forming her RFC. [Dkt. 12, p. 10.] However, the ALJ neglected to discuss the fact that in this opinion Dr. Biscotakis found that Plaintiff has serious limitations with *both* the ability to perform tasks on an autonomous basis without direct step-by-step supervision and the ability to perform tasks on a sustained basis (*i.e.*, an average day/week) without undue interruptions or distractions. [R 318-319.] Thus, it appears the ALJ impermissibly ignored parts of this admittedly significant August 12, 2013 psychiatric report because they disagreed with her RFC. The Seventh Circuit has stated that "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all

7

relevant evidence.' It is not enough for the ALJ to address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (citations omitted). Here, the ALJ failed to demonstrate a full consideration of all relevant evidence when she neglected to address the "unfavorable" portions of Dr. Biscotakis's August 12, 2013 report.

It is of no moment that although he was "afforded the opportunity to expand on these limitations, Dr. Biscotakis chose not to," as argued by the Commissioner.[4] [Dkt. 14, p. 4.] Even though the doctor did not expound in detail on Plaintiff's limitations in performing tasks, he still found serious limitations in these two areas, which the ALJ wholly failed to address. The ALJ's failure to address these two serious limitations in particular within an opinion she otherwise afforded "significant weight" is a considerable failure because the VE testified that an individual otherwise capable of performing work consistent with the ALJ's RFC would be precluded from competitive employment if they could not demonstrate adequate reliability (specifically, absences of 2 or more days per month or being off task more than 15% of a workday were preclusive). [R 71.] These two serious limitations opined by Dr. Biscotakis speak directly to whether Plaintiff had the ability to demonstrate adequate reliability on a sustained basis.

Rather than merely disregarding these serious limitations, the ALJ needed to at least address them because, at a minimum, they are inconsistent or ambiguous relative to how the ALJ interpreted the rest of the medical evidence prior to Plaintiff's DLI. Social Security Ruling ("SSR") 96-8p states that an ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Instead the ALJ totally failed to "mention, address, or adequately account for" Dr. Biscotakis's findings that Plaintiff suffered serious limitations in the aforementioned areas. *Huber v. Astrue*, 395 F. App'x 299, 302-03 (7th Cir. 2010) (finding for Plaintiff

---

[4] The Court notes the ALJ never made the point that Dr. Biscotakis failed to expound upon his check-box answers concerning Plaintiff's serious limitations. While true, the ALJ did not discuss this principle, and the Commissioner may not rely on evidence or explanations not used by the ALJ. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

8

where ALJ failed to acknowledge existence of most directly relevant report by physician on whom the ALJ otherwise relied). The ALJ also adequately failed to explain the potential inconsistency between Dr. Biscotakis's finding of no serious limitation in Plaintiff's ability to respond appropriately to supervision, coworkers, and customary work pressures despite explaining that Plaintiff "may feel overwhelmed anxiety/panic attack" as a response to these situations. [R 318.]

Moreover, in light of the above failures to address Plaintiff's significant limitations within her DLI, it is troubling that the ALJ discarded Dr. Biscotakis's November 18, 2014 Mental Capacities Assessment as "radically different" from his August 2013 opinion. [R 22; 352-53.] Specifically, the ALJ's full treatment of Dr. Biscotakis's November 18, 2014 report is as follows: "the November 2014 assessment is given no weight as it is almost one year after the date last insured and Dr. Biscotakis's treatment notes do not indicate this type of symptom intensity prior to the date last insured." [R 22.] Although this later mental assessment is indeed from a time period nearly a year after Plaintiff's DLI, Dr. Biscotakis specifically noted that this assessment, including several areas of "marked limitation," was true as of November 12, 2012 (*i.e.*, Plaintiff's alleged disability onset date). [R 353.] There is nothing to indicate that the later report by Dr. Biscotakis, a physician who the ALJ afforded "significant weight," is any less credible than his earlier mental assessment. *See Huber*, 395 F. App'x at 302. Not only is Dr. Biscotakis's later report reasonably related and relevant to Plaintiff's pre-DLI condition on its face, but the ALJ should have discussed whether the November 2014 symptom intensity found by Dr. Biscotakis was consistent with his earlier reports of "serious limitations," which the ALJ failed to address. While the Court recognizes that the best source for information about a plaintiff's condition for the period at issue is the evidence taken at that particular time, post-DLI evidence is still relevant and the ALJ must consider it. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir.2010); *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984); *Gade v. Berryhill*, 2018 WL 1174393, at *3 (N.D. Ill. Mar. 6, 2018) (collecting cases); *Garcia v. Colvin*, 2015 WL

9

4658283, at *5 (N.D. Ill. Aug. 5, 2015) (even when claimant only receives treatment for mental illness after DLI, that treatment is nevertheless relevant to assessing condition during the disability period). The ALJ should have discussed her assessment of the November 2014 report in more detail in light of the realities of the August 2013 report.

**IV.    Conclusion**

Because the ALJ's opinion lacks an adequate discussion of the issues, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Motion for Summary Judgment [dkt. 11] is granted; the Commissioner's Motion for Summary Judgment [dkt. 13] is denied.

Entered: 5/31/2018

_____

U.S. Magistrate Judge, Susan E. Cox